ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LUIS M. COTTO SANTOS<br><br>RECURRENTE<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>RECURRIDOS | TA2026RA00076 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección y Rehabilitación<br><br>Resolución de Reconsideración ICG-593-2025 |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2026.

Comparece ante nos, por derecho propio, el señor Luis M. Cotto Santos (en adelante, "el recurrente"). Solicita nuestra intervención para que dejemos sin efecto la *"Resolución"* emitida el 30 de enero de 2026 y notificada el 4 de febrero de 2026, por el Departamento de Corrección y Rehabilitación (en lo sucesivo, por sus siglas, "DCR"). Mediante esta, el DCR concluyó que al recurrente no le corresponde el beneficio de bonificaciones durante el periodo en que estuvo en Libertad Bajo Palabra dado que su liquidación de sentencia fue reevaluada de conformidad a las nuevas leyes aplicables. Además, determinó que no gozan de bonificación las penas que cumple el recurrente en virtud de la Ley de Armas del año 2000.

Por los fundamentos que expondremos a continuación, confirmamos la *"Resolución"* recurrida.

**I.**

En la actualidad, el recurrente se encuentra confinado en la Institución Correccional Guerrero 304 de Aguadilla en cumplimiento de unas penas de reclusión por haber infringido el Artículo 5.15(c) de la

derogada Ley de Armas de Puerto Rico, Ley Núm. 404-2000, sec. 458n.[1]

El asunto ante nuestra consideración tiene su origen en la *"Solicitud de Remedio Administrativo,"* presentada por el recurrente el día 22 de julio de 2025. A través de esta, solicitó que le sean acreditadas a sus penas carcelarias las bonificaciones dispuestas en el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Ley Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 1 et seq., según enmendado por la Ley Núm. 66-2022.

En atención de la anterior Solicitud, el 30 de julio de 2025, el DCR determinó que la Ley Núm. 66-2022 únicamente aplica a los miembros de la población correccional que se encuentran disfrutando de los beneficios provistos por la Junta de Libertad Bajo Palabra.

En desacuerdo, el 4 de agosto de 2025, el recurrente presentó una *"Solicitud de Reconsideración."* Alegó, que la determinación emitida por el DCR no resolvió ni atendió su petición de bonificación. En respuesta, el 30 de septiembre de 2025, el DCR emitió una *"Resolución"* por medio de la cual dispuso lo siguiente: "determinamos confirmar y modificar la respuesta recibida por parte de la División de Récord Penal de la Institución Guerrero, Aguadilla."

Aun inconforme, el recurrente instó un recurso de revisión judicial ante este Tribunal. El 21 de noviembre de 2025, bajo el caso TA2025RA00313, un panel hermano adjudicó el asunto presentado ante sí. Resolvió dejar sin efecto la determinación emitida por el DCR y devolvió el caso al referido Departamento para que emitiera una respuesta responsiva y adecuada.

Posteriormente, el 4 de febrero de 2026, el DCR notificó la *"Resolución"* que hoy nos ocupa. Mediante esta, concluyó que al recurrente no le corresponde bonificación por el periodo en que estuvo en Libertad

---

[1] Surge del Expediente Administrativo, que el recurrente fue convicto por doble infracción del Artículo 5.15C de la Ley de Armas del 2000, *supra*. Asimismo, fue sentenciado a cumplir pena carcelaria por infringir el Artículo 189 del Código Penal de 2012, Ley Núm. 146-2012, 33 LPRA sec. 5260 y el Artículo 5.04 de Ley de Armas del 2000, 25 LPRA sec. 458c. Las sentencias dictaminadas en su contra se emitieron como parte de los casos criminales: CBD2013G0594; CLA2013G0549; CLA2013G0550; y CLA2013G0551. Las penas impuestas en virtud del Artículo 189 del Código Penal, *supra* y a tenor del Artículo 5.04 de la Ley de Armas, *supra* fueron cumplidas en el año 2019 y 2024 respectivamente.

Bajo Palabra dado que su liquidación de sentencia fue reevaluada de conformidad a las nuevas leyes aplicables. Además, determinó que no gozan de bonificación las penas que cumple el recurrente en virtud de la Ley de Armas del año 2000.

En su determinación, el DCR esbozó las siguientes determinaciones de hechos:

1. El 11 de julio de 2025, el recurrente radicó escrito de solicitud de remedios administrativo. En su solicitud de remedios administrativo, planteo la siguiente situación: que solicita al personal correspondiente del área de récord penal, que le aplique la Ley 66.

2. El 22 de julio de 2025, el evaluador Sr. Juan Nieves Cruz, de la División de Remedios Administrativos de la Oficina Local de Guerrero, Aguadilla, recibe, enumera, codifica y firma el recibo de la solicitud de Remedio Administrativo.

3. El 1 de agosto de 2025, el evaluador Sr. Juan Nieves Cruz, de la División de Remedios Administrativos de la Oficina Local de Guerrero, Aguadilla, le entregó recibo al recurrente Luis M. Cotto Santos, de que su solicitud de remedio está en proceso y de qué el área concernida le contesté.

4. El 30 de julio de 2025, Sr. Juan Nieves Cruz, de la División de Remedios Administrativos de la Oficina Local de Guerrero, Aguadilla, recibe la contestación del área concernida, para ser entregada al recurrente.

En la respuesta del área concernida, la supervisora del área de récor penal la Sra. Madilyn Dumeg Juarbe, le expuso que, la Ley 66 es aplicable a los Miembros de la Población Correccional, que están en la libre comunidad disfrutando del beneficio de la Junta Libertad Bajo Palabra. Los MPC que se encuentra en la Institución se le aplicó la Ley 87 (estos si cualifican) a su vez se le otorga la bonificación por estudios o trabajo (si lo realizan). Ley 66 no aplica a personas que estén cumplimiento sentencia en una institución carcelaria.

5. El 30 de julio de 2025, Sr. Juan Nieves Cruz, de la División de Remedios Administrativos de la Oficina Local de Guerrero, Aguadilla le entregó al recurrente respuesta del área concernida, remitida por el evaluador.

6. EL 4 de agosto de 2025, el recurrente inconforme con la respuesta presentó Solicitud de Reconsideración indicando que no está de acuerdo con la respuesta, ya que no resuelve ni atiende su solicitud planteada por lo que solicitó al personal correspondiente que le apliquen la Ley 66.

7. Recibida la Solicitud de Reconsideración por la Coordinadora Regional, Melissa Ruiz Sepúlveda, al ser acogida la solicitud de reconsideración, tendrá (30) días laborables para emitir Resolución de Reconsideración. Este término comenzará a transcurrir desde la fecha en que se emitió la respuesta de reconsideración al miembro de la población correccional salvo que medie justa causa.

8. El Tribunal de Apelaciones realizó la sentencia TA2025RA00313, en la cual resolvió devolver el caso al Departamento de Corrección y Rehabilitación para que emita una respuesta adecuada y responsiva, de conformidad a lo dispuesto en esta sentencia.

Nuevamente en desacuerdo, el 23 de febrero de 2026, el recurrente presentó ante nos el recurso de revisión judicial de epígrafe. Mediante este, esbozó los siguientes señalamientos de error:

Inducción a error mediante datos falsos. El DCR establece fechas de egresos y movimientos que no concuerdan con la realidad de los hechos. El DCR alega que el recurrente salió el 13 de julio de 2019, cuando el récord penal demuestra que fue el 18 de octubre de 2022.

Error de derecho sobre la Ley Núm. 66. El DCR insiste erróneamente en que la Ley Núm. 66 no aplica al recurrente por su condición de confinado actual. Al hacer esto, la agencia ignora el propósito legislativo y el hecho de que el recurrente gener[ó] dichos créditos mientras se encontraba en libertad bajo palabra en la cual trabajó y cumplió con los requisitos de Ley.

Desafío al mandato judicial. La Sentencia de este Tribunal fue clara al establecer que el recurrente tiene derecho a dichas bonificaciones. El DCR no tiene discreción para ignorar este derecho basándose en interpretaciones legales que ya fueron superadas por la Sentencia de este foro.

El 26 de febrero de 2026, notificamos una *"Resolución"* mediante la cual le concedimos al DCR un término de veinte (20) días para que presentara su alegato en oposición y copia certificada del expediente administrativo de este caso.

En cumplimiento de ello, el 18 de marzo de 2026, el DCR presentó su alegato en oposición junto a la requerida copia certificada del expediente administrativo.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco jurídico aplicable al asunto ante nuestra consideración.

**II.**

**B.    Revisión Judicial de las Decisiones Administrativas**:

La revisión judicial de determinaciones administrativas está limitada por los parámetros establecidos en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 L.P.R.A. sec. 9671-977. De ordinario, esta tiene lugar luego de que se adjudican las controversias pendientes ante una agencia y concluyen todos los trámites administrativos. *Miranda Corrada v. DDEC et al.*, 211 DPR 738, 746 (2023).

Las determinaciones de las agencias administrativas son revisables ante el foro judicial para garantizar que estas actúan dentro de marco de

las facultades que les fueron delegadas por ley. *Voilí Voilá Corp. et al. V. Mun. Guaynabo,* 213 DPR 743, 753 (2024); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022). De esta manera, los ciudadanos tienen un foro al cual recurrir para vindicar sus derechos y obtener un remedio en los casos en que las agencias actúen de forma arbitraria. *Voilí Voilá Corp. et al. V. Mun. Guaynabo,* supra, pág. 753. La revisión judicial de una decisión administrativa se circunscribe a examinar lo siguiente: 1) si el remedio concedido por la agencia fue el apropiado; 2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por la prueba sustancial que surgió del expediente administrativo; y 3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA FED. SAVS. BANK,* 214 DPR 473, 484-485 (2024).

En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Cabe resaltar, que en el ejercicio de revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia administrativa. *Voilí Voilá Corp. et al. V. Mun. Guaynabo,* supra, pág. 754. Antes de variar la referida decisión se debe examinar la totalidad del expediente y "determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba." *Íd*. A su vez, las decisiones administrativas se deben evaluar bajo el marco de la deferencia, por razón de la experiencia y pericia de dichas agencias respecto a las facultades que se le han delegado. *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 215 (2012).

En consideración a la aludida deferencia, se ha establecido que "las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras que la parte que las impugna no produce suficiente evidencia para derrotarlas." *Batista, Nobbe v. JTA. Directores*, supra, pág. 215. A la luz de ello, la parte que impugne una decisión administrativa tiene el peso de la prueba para demostrar que esta no se sustenta en el expediente administrativo o que las conclusiones a las cuales llegó la agencia son irrazonables. *OEG v. Martínez Giraud*, supra, pág. 89.

**B.      Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011 (Ley Núm. 2-2011):**

La Ley Núm. 2-2011 establece la siguiente política pública:

[L]a creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. 3 LPRA, Ap. XVIII, Art. 2.

En lo aquí pertinente, el DCR tiene como facultad el "ampliar los programas de educación y trabajo para que impacten a toda la población correccional que interese participar y asegure la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables." 3 LPRA, Ap. XVIII, Art. 5(f). "La bonificación se refiere a la posibilidad de que el Estado considere cumplida la pena de reclusión del confinado antes de cumplir su condena. Representa una expectativa de los confinados en relación con la fecha en que podrían obtener su libertad." *Carrasquillo Román v. Inst. Correccional,* 204 DPR 699, 706 (2020).

Cónsono con lo anterior, el Capítulo IV de la Ley Núm. 2-2011 regula las modificaciones de sentencia de las que se pueden beneficiar los miembros de la población correccional. De una parte, existen las rebajas del término de sentencias por buena conducta y asiduidad. De otra parte, se encuentran las bonificaciones por trabajo, estudio o servicios.

Así pues, el Artículo 11 de la precitada Ley establece el aludido Sistema de rebaja de términos de sentencias. Este Artículo dispone lo siguiente con relación a las infracciones de Ley ejecutadas con posterioridad a la vigencia del Código Penal de 2004:

[…]

Toda persona sentenciada a cumplir término de reclusión en cualquier institución, con posterioridad a la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan, o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate:

c) por una sentencia que no excediere de quince (15) años, seis (6) días en cada mes; o

d) por una sentencia de quince (15) años o más, siete (7) días por cada mes.

Dicha rebaja se hará por mes, que representará un plazo de 30 días. Si la sentencia contuviere una fracción de mes, bien sea al principio o al fin de dicha sentencia, se le abonarán un (1) día por cada cinco (5) días o parte de los mismos, contenidos en dicha fracción. 3 LPRA, Ap. XVIII, Art. 11.

[…]

Las referidas bonificaciones no son absolutas, puestos que existen una serie de penas excluidas de los abonos establecidos. Entre ellas, se encuentra la reincidencia agravada; la reincidencia habitual; el abuso sexual infantil; y los delitos estatuidos en leyes especiales que excluyan las rebajas dispuestas en este Artículo. *Id.*

El Artículo 12 de la Ley Núm. 2-2011 establece las bonificaciones por trabajo, estudio o servicios. Dicho Artículo lee en lo atinente como sigue:

A toda persona sentenciada a cumplir pena de reclusión por hechos cometidos con anterioridad o bajo la vigencia del Código Penal de Puerto Rico vigente, en adición a las bonificaciones autorizadas en el Artículo anterior, el Secretario o el Presidente de la Junta de Libertad Bajo Palabra, según aplique, podrán conceder bonificaciones a razón de no más de cinco (5) días por cada mes en que el integrante de la población correccional o liberado por la Junta de Libertad Bajo Palabra esté empleado en alguna industria o que esté realizando estudios como parte de un plan institucional, bien sea en la libre comunidad o en el establecimiento penal donde cumple su sentencia, y preste servicio a la institución correccional durante el primer año de reclusión. Por cada año subsiguiente, podrá abonarse hasta siete (7) días por cada mes. (Énfasis suplido)

> Si la prestación de trabajo o servicios por el integrante de la población correccional o liberado por la Junta de Libertad Bajo Palabra fuere de labores agropecuarias, el Secretario deberá conceder bonificaciones mensuales hasta un monto no mayor de siete (7) días durante el primer año de cumplimiento de su sentencia y hasta un monto no mayor de diez (10) días mensuales durante los períodos de cumplimiento de su sentencia subsiguientes al primer año. 3 LPRA, Ap. XVIII, Art. 12.

[…]

Cabe señalar, que la Ley Núm. 66-2022 es una legislación que, entre otras cosas, se creó con el propósito de enmendar los citados Artículos 11 y 12 de la Ley Núm. 2-2011. Esto, con el fin de aclarar que los convictos que se encuentran disfrutando del privilegio de libertad bajo palabra también son acreedores de las bonificaciones por estudio, trabajo, buena conducta, asiduidad y otros servicios. Véase, la Exposición de Motivos de la Ley Núm. 66-2022. De esta forma, se reafirma que los convictos que están en la libre comunidad también tienen el beneficio de "extinguir más rápidamente su sentencia utilizando herramientas de probada utilidad para evitar la reincidencia, como lo son los estudios y el trabajo." *Id.*

**III.**

En esencia, el recurrente sostiene que incidió el DCR al no concederle las bonificaciones por trabajo que contempla la Ley Núm. 2-2011, según enmendada por Ley Núm. 66-2022. En oposición, el DCR alega que el recurrente no es acreedor de las bonificaciones peticionadas, puesto que mientras se encontraba en libertad bajo palabra cumplía una pena que no gozaba de bonificación por disposición expresa de la derogada Ley de Armas del año 2000.

Tras una evaluación detenida de los argumentos de las partes y de la copia certificada del expediente administrativo del presente caso, determinamos *confirmar* la *"Resolución"* objeto de revisión. Nos explicamos.

Si bien es cierto que la Ley Núm. 2-2011, según enmendada, permite que las bonificaciones por trabajo, estudio y buena conducta, puedan aplicar tanto al integrante de la población correccional como al

liberado por la Junta de Libertad Bajo Palabra, también es correcto que los abonos establecidos por dicha Ley no se conceden de forma automática o en adjudicación aislada de la aplicación de otras leyes especiales. Así pues, al momento de examinar la procedencia de una bonificación a tenor de los precitados Artículos 11 y 12, se hace necesario incluir en dicha evaluación la posible aplicación de causas de exclusión, según contempladas por la propia Ley Núm. 2-2011 u otras leyes espaciales pertinentes.

Surge del expediente administrativo, que el recurrente fue sentenciado por violentar el Artículo 189 del Código Penal, *supra* y por infringir los Artículos 5.04 y 5.15(C) de la derogada Ley de Armas del año 2000. La pena carcelaria que cumple en virtud del Artículo 515(C) es por dos (2) cargos. Cabe señalar, que el recurrente cumplió con la pena impuesta a tenor del Artículo 189 del Código Penal, *supra,* según se desprende de la *"Hoja de Control Sobre Liquidación de Sentencias"* del 5 de diciembre de 2024.[2] Asimismo, según surge de dicho documento, el recurrente debió cumplir, como máximo, el día 14 de julio de 2024, la pena impuesta al amparo del precitado Artículo 5.04 de la Ley de Armas del año 2000.

Así pues, al recurrente le resta por cumplir las penas impuestas en virtud del Artículo 5.15(C) de la Ley de Armas del año 2000. Los cómputos esbozados en la referida Hoja de Control establecen que el recurrente cumplirá dichas condenas en la fecha de 21 de octubre de 2026 y como máximo extinguirá las aludidas penas en el año 2027. De lo anterior, se desprende que las condenas vigentes del recurrente son exclusivamente al amparo de la precitada Ley de Armas del año 2000.

Habiendo establecido lo que antecede, nos corresponde en estos momentos examinar la Ley del Armas del año 2000. El Artículo 5.15 estatuye como conducta delictiva el disparar o apuntar un arma, ya sea por medio de un disparo voluntario en un sitio público o a través de la acción

---

[2] Véase, "Hoja de Control sobre Liquidación de Sentencias," Entrada Núm. 3 de SUMAC TA, Anejo I: "Expediente Administrativo," página 31.

de apuntar a una persona con un arma de forma intencional. Véase, 25 LPRA sec. 458. Si los referidos actos se ejecutan al utilizar un arma neumática, entonces la pena aplicable será la estatuida en el Artículo 5.15(C). Es preciso reiterar, que el recurrente fue convicto en virtud del anterior inciso (C). De igual modo, es meritorio mencionar, que **el acto delictivo de apuntar y disparar un arma de fuego se excluye de los beneficios de las bonificaciones** que se adjudican al termino de sentencia.[3] Ante este escenario, nos vemos precisados a concluir que al recurrente no le corresponden las bonificaciones peticionadas dado a la exclusión expresa del Artículo 5.15 de la Ley de Armas del año 2000, *supra*. Por lo tanto, confirmamos la *"Resolución"* recurrida.

---

[3] El Artículo 5.15 de la Ley de Armas de 2000 lee como sigue:

(A) Incurrirá en delito grave toda persona que, salvo en casos de defensa propia o de terceros o de actuaciones en el desempeño de funciones oficiales o de actividades legítimas de deportes, incluida la caza, o del ejercicio de la práctica de tiro en un club de tiro autorizado:
    (1) voluntariamente **dispare** cualquier arma en un sitio público o en cualquier otro sitio, aunque no le cause daño a persona alguna, o
    (2) intencionalmente, aunque sin malicia, **apunte** hacia alguna persona con un arma, aunque no le cause daño a persona alguna. La pena de reclusión por la comisión de los delitos descritos en los incisos (1) y (2) anteriores, será por un término fijo de cinco (5) años. De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.
    Disponiéndose que, aquella persona que cometa el delito descrito en el inciso (1) anterior, utilizando un arma de fuego y convicto que fuere, no tendrá derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, **bonificaciones** o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta.
    Del mismo modo, cuando una persona cometa el delito descrito en el inciso (2) anterior, utilizando un arma de fuego, mediando malicia y convicto que fuere, no tendrá derecho a sentencia suspendida, a salir en libertad bajo palabra o a disfrutar de los beneficios de algún programa de desvío, **bonificaciones** o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta.

[...]

(C) Será culpable de delito grave con pena de reclusión por un término fijo de tres (3) años, toda persona que, salvo en casos de defensa propia o de terceros o de actuaciones en el desempeño de funciones oficiales o actividades legítimas de deportes, incluida la caza; actividades artísticas, actividades recreativas o deportivas legítimas, como por ejemplo el juego de "gotcha", "airsoft" o las recreaciones históricas, **incurra en cualquiera de los actos descritos anteriormente utilizando un arma neumática.** De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de seis (6) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un (1) día. 25 LPRA sec. 458n. (Énfasis suplido).

**IV.**

Por los fundamentos expuestos, *confirmamos* la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones